## TEAGUE v. ALABAMA COCA-COLA BOTTLING CO. (7 Div. 242.)

(Supreme Court of Alabama. April 5, 1923.)

1. Evidence ⚖⇒123(11) — Declarations by truck driver after leaving scene of accident not admissible.

In an action for personal injuries alleged to be due to the negligence of defendant's truck driver, declarations of the truck driver, 30 minutes after the accident, and after he had left the scene of the accident and returned, were properly excluded as no part of the res gestæ.

2. Appeal and error ⚖⇒1170(3)—Where giving of general affirmative charge with hypothesis warranted, all errors rendered harmless.

Under Supreme Court rule 45 (175 Ala. xxi, 61 South. ix), any errors in rulings on demurrers to pleas is rendered harmless, where the evidence in the case, or its reasonable tendencies, if believed by the jury, did not establish or tend to establish plaintiff's right to recover under any count of the complaint, and the jury were given a general affirmative charge with hypothesis, requested by defendant.

3. Highways ⚖⇒175(1)—Testimony held to show plaintiff negligent as matter of law.

Where the undisputed evidence disclosed that defendant's truck driver, though negligently failing and refusing to leave the center of the highway and turn to the right in passing plaintiff's automobile, yet passed without touching plaintiff's car, and plaintiff, in turning back to the center of the road, steered too far to the left, and ran over an embankment on that side of the road, and was overturned, plaintiff's negligence, and not the negligence of defendant, was the proximate cause of the injury.

Appeal from Circuit Court, Cleburne County; A. P. Agee, Judge.

Action for damages by William Teague, by his next friend, against the Alabama Coca-Cola Bottling Company. From a judgment for defendant, plaintiff appeals. Affirmed.

Crumpton & Nichols, of Heflin, for appellant.

It is the duty of the driver of a truck or other vehicle to keep to the right when meeting another vehicle on the public road. Code 1907, § 7745. Where there is any evidence tending to support the complaint, the question of liability becomes one of fact for the jury. B. R., L. & P. Co. v. Donaldson, 14 Ala. App. 160, 68 South. 596; Sou. Rwy. Co. v. Collins, 179 Ala. 335, 60 South. 95; Snead v. Patterson, 190 Ala. 43, 66 South. 664; Montgomery St. Ry. Co. v. Hastings, 138 Ala. 432, 35 South. 412. An efficient, adequate cause being found for injury received by the plaintiff, it must be considered as the true cause, unless another independent cause is shown to have intervened. Schumaker v. St. P., etc., R. Co., 46 Minn. 39, 48 N. W. 559, 12 L. R. A. 257.

Merrill & Jones, of Heflin, for appellee.

The material allegations of the complaint not being supported by the evidence, the trial court properly gave the affirmative charge for defendant, and rulings on the pleading, if error, were without injury.

MILLER, J. William Teague, a minor, by his next friend, H. J. Teague, sues the Alabama Coca-Cola Bottling Company, a corporation for damages on account of injuries al-

leged to have been caused by a servant or agent of defendant while acting in the line and scope of his employment, and while driving a truck of the defendant negligently failing or refusing to turn to the right of the road, and thus forcing the car in which the plaintiff was riding to leave the road and fall over a steep embankment, injuring him. There was jury and verdict in favor of the defendant, and from the judgment thereon by the court the plaintiff prosecutes this appeal.

There were three counts, 1, 3, and A, on which the case went to the jury; counts 1 and 3 charge simple negligence, and count A is based on wanton and willful injury. E. D. Bridges was driver of the truck of the defendant. On examination of H. J. Teague, father of plaintiff and his witness, the following questions were asked by plaintiff:

"Did you and Mr. Bridges and any one else in Mr. Bridges' presence have a conversation about the accident?

"What was the conversation that you had with Mr. Bridges at that time, at that time and place?"

The court would not permit these questions to be answered by the witness. Whereupon the plaintiff stated he expected to prove that 30 minutes later, after Mr. Bridges had been to Heflin and returned, that he stated to this witness:

"That he came right up the middle of the road, that he did not give the boy any of the road, and that they passed right on this fill where the accident took place."

[1] This was not a part of the res gestæ. It was 30 minutes after the accident occurred, and merely admissions by an agent as to a past transaction—a declaration by the driver of the truck subsequent to the injury, and the defendant could not and should not be bound by it. The objections of the defendant to the questions calling for this testimony were properly sustained by the court. M. & C. R. Co. v. Womack, 84 Ala. 149, 4 South. 618; Mobile, L. & R. Co. v. Baker, 158 Ala. 491, 48 South. 119; Tenn. Co. v. Kavanaugh, 93 Ala. 324, 9 South. 395.

[2] In the oral charge of the court the following written charge requested by the defendant was given:

"The court charges the jury that, if you believe the evidence in this case your verdict will be for the defendant."

This is the main error insisted on by the plaintiff. It is true plaintiff insists that the court erred in overruling his demurrers to pleas numbered 3, 4, 6, and 9. This general charge for the defendant was properly given by the court, if the evidence in the case, or its reasonable tendencies, if believed by the jury, did not establish or tend to establish the right of plaintiff to recover under any count of the complaint. If this is true, then the errors, if there were any, in the rulings of the court on demurrers to the pleas would be without injury. McMillan v. Aiken, 205 Ala. 40, h. n. 9–11, 88 South. 135; rule 45, Supreme Court, 175 Ala. xxi, 61 South. ix. So we will consider the evidence under this charge, to see if there is any evidence, or reasonable inferences from it, which would establish or tend to establish the averments in any one of the counts of the complaint. The trial court heard the evidence and reached that conclusion. The trial court in its oral charge to the jury, just before giving the written charge, stated to them:

"I have come to the conclusion that there is no evidence supporting the allegation that this boy was injured by reason of being forced by the truck out of the road. His injury was caused by reason of the fact that when they met, without saying how far to the left or the right the truck was, the injury was caused by the boy falling over the left-hand side of the road. As I understand the counts of the complaint, he alleges that he was forced over the embankment, and he was injured by reason of that. My view of the testimony is that the testimony is without conflict that his injury was caused by his falling over the left-hand side of the embankment, after the passing of the truck."

Count 1 of the complaint avers:

"The driver of the said truck * * * failed or refused to turn to the right of said road when said driver met plaintiff in said Ford car, and by reason of the failure of said driver to turn said truck to the right of the road forced the car containing plaintiff to leave the road and fall over a steep embankment."

The part of count 3 material on this subject states:

"Ed Bridges, agent, etc., * * * negligently failed or refused to drive to the right of the aforesaid road on meeting plaintiff and as a direct, proximate consequence thereof the car containing plaintiff was forced out of the road and over a high embankment, and was turned over, and plaintiff was badly injured as follows," etc.

Count A contains the following averment on this subject:

"Plaintiff avers that he, plaintiff, drove the Ford car in which he was riding to the right-hand side of the road at a reasonable rate of speed; that the road at that place was wide enough for said truck to pass without endangering plaintiff in any manner. But plaintiff avers that defendant's agent or servant, the aforesaid Ed Bridges, while acting within the line and scope of his employment, willfully and wantonly drove the truck of defendants as aforesaid down the middle of the road, without in any wise turning to the right, and in such close proximity to the car in which the plaintiff was driving that plaintiff was forced, in order to avoid a collision with said truck, to drive his car entirely out of the road, and in attempting to drive said car back into the road the said car in which plaintiff was driving

fell over and down a steep and high embankment."

The plaintiff is 15 years old, and was using his father's car without permission. There were three younger boys in the car with plaintiff, and they were going toward Anniston, while the truck was coming from Anniston. They met and passed each other on a fill or embankment, where the road was at least 20 feet wide. The strongest evidence for plaintiff is his own testimony, which was as follows on direct examination on this subject:

"We were going towards Anniston, and the truck was coming towards Heflin. When I first seen him coming, I slowed down and commenced turning out of the road, and I seen that he aimed to hit me. We turned out of the road, and the man driving the truck just stayed in the middle of the road; he did not turn to the right. He didn't turn any way at all, and the truck kept coming. Before I turned entirely out of the road, the truck was immediately in front of us. The truck was traveling fast. I turned out of the road, and about the time I got out over there in the ditch, he was just passing. When I got plumb out of the road in the ditch, he kept coming and about the time I got nearly going off the right-hand side, he was passing me then, and I jerked it behind the truck, and before I could get it straight on the road it ran off on the left-hand side. The truck and no part of it touched my car as it went by. It did not touch it that I could tell; I don't know how close it came to my car, but it didn't lack much of hitting it. I say it didn't hit me, but it come in just a little of hitting me. There was not room enough where he passed me for me to have stayed in the road with the car and not got in the ditch. There was not enough room for my car to stay in the road and not get in the ditch. The road was so narrow between him and the ditch that I had to get out in the ditch for him to pass. The road is wide there, about 20 feet wide. It is wide enough for two cars to pass all right. After the truck passed, I never went any piece up the road before I tried to swing back into the road. As soon as it passed me I swung back into the road, sort of catacornered across the road, and then I turned off on the other side. I don't know how high that place was that it turned over. My car turned over."

On cross-examination the plaintiff said:

"I never met the truck on the curve. I met him on this end of the fill, just the other side of the curve. I passed it, and it passed it. It did not strike me, and the truck came on towards Heflin. When I undertook to get my car back straight in the road, I did not get it straight, but ran catacornered on the other side and ran off."

Mr. Wade, witness for the plaintiff, testified on this subject:

"Yes; I noticed where the car tracks turned across the road. Just before the car track turned across the road, they were pretty close to the bank on the right-hand side, going back. It was somewhere out on the fill where he took an abrupt turn to the left. I don't think, if this car had gone on in the direction it was going, that it was in imminent danger of going over the fill on the right. I didn't make any measurements, but I think the right-hand wheel was a foot or a foot and a half from the edge of the road on the right. The road has been graded off and is level there; it is pretty near flat. Then the car switched across. I think the truck tracks were a little further over on the left of the road going this way."

Witness testified on cross-examination:

"It is my judgment, from looking at the tracks, that there must have been something like 20 or 25 yards from where they passed to where the Ford car turned abruptly to the left. * * * I think the left-hand track of the truck was at least 2 feet from the left-hand track of the car at the place where they passed."

[3] It affirmatively appears from the evidence, and without dispute as well as from plaintiff's own testimony, that the negligence of defendant's driver of the truck in failing or refusing to drive it on the right side of the middle of the public highway in passing plaintiff's car, if true, was not the proximate cause of the injury. There was an intervening, direct, and efficient cause, with which the defendant was not connected, that produced the injury. After the cars passed each other in safety, without injury to either, the plaintiff voluntarily steered his car too far from the right to the left side of the road, and ran it off the embankment of the road on the left side, inflicting the injuries, instead of steering his car so it would run and keep in the road, which was then free from danger and obstructions. This act of plaintiff was the proximate cause of the injury. The plaintiff, from the testimony, should have turned his car after the truck passed at an angle that would have kept it in the road, instead of at an angle that ran it across the road and down the embankment on his left.

The court did not err in giving the general affirmative charge with hypothesis, requested by the defendant. The judgment is therefore accordingly affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.